## CALLAHAN v. WESTERN & ATLANTIC RAILROAD CO. et al.

The plaintiff's petition stated a case against the Southern Railway Company, sufficient as against a general demurrer; and under the evidence introduced upon the trial of the case against the other defendant, the Western & Atlantic Railroad Company, the question of the liability of the latter defendant was one for the jury under the evidence and proper instructions from the court, adjusted to the issues made.

MARCH 2, 1912.

Action for damages. Before Judge Bell. Fulton superior court. January 14, 1911.

W. M. Callahan filed suit against the Western & Atlantic Railroad Company and the Southern Railway Company, and alleged as follows: While in the employment of the Western & Atlantic Railroad Company in the capacity of conductor of a yard engine, the plaintiff's engine was pushing, at the rate of six or eight miles

an hour, a train of about 25 cars eastward along the southbound
main line of the Georgia Railroad, in the city of Atlanta, for deliv-
ery to the lessees of that railroad. When his train reached a point
between Moore and Bell streets a switch-engine of the Southern
Railway Company was discovered on the same track, about 12 or
15 car-lengths ahead and approaching the plaintiff's train. He and
one Crawley, a fellow trainman, were on top of the car nearest the
Southern Railway switch-engine, this being the proper place for the
plaintiff to be in the discharge of his duty as .yard conductor in
charge of the train. The plaintiff and Crawley both signaled the
engineer of plaintiff's train to stop; this signal should have been
received by another train-hand next to the engine, but he negli-
gently failed to receive and transmit the signal to the engineer;
and finally the fireman of the plaintiff's train took the signal and
transferred it to the engineer, who, suddenly and without warning,
applied his brakes with such violence as to break the train in two,
and the section of the train on which the plaintiff was riding con-
tinued on its way toward the Southern Railway switch-engine.
"Quite an emergency was upon the plaintiff and his fellow trainman
on these six or eight cars to stop them, and they accordingly both
made a dash for the brake at the end of the car upon which they
were, for the purpose of applying it. Plaintiff's fellow trainman
reached the brake first, and plaintiff, in the emergency, at once
turned and went to the other end of the car towards the Southern
engine for the purpose of signaling said Southern engine to stop, in
order to avoid a collision. Just as plaintiff reached a point at
the edge of the car, the headlight from the Southern Railway engine
blinded him, and in the darkness, and not being able to see, he
stood unbalanced and insecure upon the edge of the car. Being
thus so close to the edge of the car and unbalanced, and also moved
by the emergency of the impending collision with the Southern
switch-engine, the plaintiff jumped from the car, and in striking
parts of the car and the ground below was greatly and permanently
injured." The train-hand between the plaintiff and the engine was
negligent in not transferring the signal, and in not keeping a proper
lookout; both the engineer and fireman were negligent in not keep-
ing a proper lookout, and in not seeing the signals given by plain-
tiff and Crawley; the engineer was negligent in applying his brake
so suddenly and violently as to break the train in two; the crew of

the Southern Railway switch-engine were negligent in being on the east-bound main line of the Georgia Railroad when said engine was going west, they being upon the wrong track, and were further negligent in not stopping the switch-engine, and in continuing to move the same in the face of the approaching train of plaintiff "until within about six feet of plaintiff's train." At the trial term the court, on general demurrer, dismissed the action as to the Southern Railway Company.

The case proceeded to trial against the Western & Atlantic Railroad Company. The plaintiff testified: "I occupied the head car going to the Georgia road. The car . . was twenty-five or more cars away from the engine. I was not in the rear. I was on the front car from the engine. I was shoving them. The engine was pushing instead of pulling them. We push all deliveries to the Georgia road. The engine was behind. I was on the front car. That was the car nearest to the Southern engine that I saw. The top of that car was my place. It was my duty to see everything going along the railroad and see that I didn't get in no trouble. I was in charge of the train. They had to report to me. This obstruction, or whatever it was, when I first saw it, was about 15 or 16 car-lengths or more. It was on the same track that I was on, the Southern. It was a Southern engine. When I saw it I commenced waving my hand down; gave my men signal to transfer to the engineer. I gave them a stop-signal first; what we call a slow stop-signal. That was the regular signal that I gave. The proper signal to give in the case of emergency is a washout signal. A washout signal is to stop at once. The signal was communicated to the back man [brakeman], or to the fireman if he could see it. I direct the signals necessary to get around from point to point. Seeing that there was going to be trouble, I gave the stop-signal that way [indicating]. And seeing we were going to get closer, I gave this here [indicating]. That is a washout or stop at once. Dead stop. It is just the same as shooting a torpedo. I transferred that signal to the brakeman on the train, and the brakeman transferred it to the man next to the engine, and the engineer was to take it from the man next to the engine if he was where the engineer could see him. The engineer got this one from the fireman. As to the distance I had traversed in the time while I was giving these signals, I had traveled, I suppose, 8 or 9 cars. As to how close I was on to the

Southern Railroad engine, it was a safe distance to stop, providing it hadn't broke loose then. When I gave the signal, 6 or 8 cars broke loose, probably toward the Southern engine. The knuckle in the end of the car broke out. After those cars broke loose they were running at the same speed as before they broke. I was on the car next to the Southern engine. I run to get the brakes. I discovered myself right at the end of the car with my head falling toward the Southern engine, and to keep from falling with my head toward the engine I made a jump." At the conclusion of the evidence introduced by the plaintiff the court granted a nonsuit.

*Reuben R. Arnold* and *Hill & Wright,* for plaintiff.

*Tye, Peeples & Jordan* and *McDaniel & Black,* for defendants.

BECK, J. (After stating the foregoing facts.)

1. The petition stated a cause of action against the Southern Railway Company, sufficient to withstand an oral motion to dismiss in the nature of a general demurrer. No special demurrer was filed, so far as appears from the record, requiring the plaintiff to show specifically whether he actually jumped or fell from the car upon which he was standing, and which was the leading car in the string of cars that was being pushed by the Western & Atlantic Railroad Company's locomotive; but the allegations of the petition show that the plaintiff's last position upon the car, when he jumped or fell therefrom, was one of peril, and an emergency requiring quick and prompt action on his part had been brought about by the negligence on the part of the employees of the Southern Railway Company and the negligence of the coemployees of the plaintiff upon the latter's train. The Southern Railway engine was wrongfully on the track upon which it was approaching the plaintiff's train; the trainman on the plaintiff's train, according to the allegations of the petition, was negligent in not receiving the signals which the plaintiff first gave, and in failing to transmit those signals to the engineer; and the engineer of this train, who finally received the signals, was negligent in too suddenly and violently applying brakes, which resulted in a break of the plaintiff's train; in consequence of which the car upon which plaintiff was standing, and others, moved on towards the approaching engine of the Southern Railway Company. If the allegations are true, the motion of the car upon which plaintiff was standing, towards the approaching locomotive, was the result of negligence, and the approaching

of the locomotive of the Southern Railway Company under the circumstances was wrongful and negligent. Thus the concurring negligence of the employees of the Southern Railway Company who were operating the locomotive, and the negligence of the trainman and the engineer that caused the breaking of plaintiff's train, brought a moving locomotive and cars disconnected from the control of their locomotive to a point where collision was apparently imminent. The petition sets forth facts showing an emergency; and if, acting under necessity brought about by this apparent emergency, the plaintiff, being in a position of apparent peril, jumped from the car, or jumped because, as it is alleged, he became "unbalanced" on the edge of the car, it can not be said that the negligence of the employees operating the approaching locomotive was not the proximate cause of the plaintiff's injury received in falling or jumping from the car. The fact that the negligence of others contributed to the existence of the emergency did not have the effect of relieving the Southern Railway Company of the consequences of the negligence of its employees. Consequently it was error for the court to dismiss the case, upon general demurrer, as to the Southern Railway Company.

2. After a careful consideration of the entire evidence, we are of the opinion that the question of the liability of the Western & Atlantic Railroad Company was one for decision by the jury under the evidence and proper instructions from the court upon the issues involved, and that it was error to grant a nonsuit.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*